730 So.2d 107 (1998)
STATE of Alabama, et al.
v.
ALABAMA MUNICIPAL INSURANCE CORPORATION, et al.
1961555.
Supreme Court of Alabama.
May 22, 1998.
Rehearing Denied February 19, 1999.
Jeff Long, asst. atty. gen.; and John M. Johnson, Madeline H. Haikala, and Robin H. *108 Graves of Lightfoot, Franklin & White, L.L.C., Birmingham, for appellants.
Richard A. Ball, Jr., and Fred B. Matthews of Ball, Ball, Matthews & Novak, P.A., Montgomery, for appellees.
MADDOX, Justice.
This appeal involves a question of the constitutionality of Alabama statutes that create tax credits in favor of insurance companies that issue property and casualty insurance policies. Eight insurance companies contend that §§ 27-4A-3(a)(3)d.1. and d.2., Ala.Code 1975, which create tax credits that result in a reduction of the insurance premium tax, are discriminatory when applied and that they, therefore, violate §§ 1 and 35 of the Alabama Constitution of 1901 and/or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
The parties raise the following specific questions:
(1) Did the trial court apply the appropriate principles of law in ruling on the constitutionality of the tax credits?
(2) Does the State's granting of the tax credits violate either the Alabama Constitution or the United States Constitution?
(3) If the tax credit statutes are held to be unconstitutional, should they be severed from the premium tax statute? and
(4) Whether the trial court, upon determining that the tax credits were unconstitutional, erred in applying that determination quasi-prospectively?

Facts and Procedural History
In the early 1980s, a group of foreign insurance companies challenged the constitutionality of the insurance premium tax then in effect, on the grounds that it violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The tax scheme then in effect imposed either a 3% or a 4% premium tax on an out-of-state insurer, depending on the kind of insurance the company sold, but only a 1% tax on a domestic insurer, without regard to the kinds of insurance the domestic company sold. Although the Alabama statutes then applicable allowed for the reduction of the tax rate on foreign insurers if those companies met certain requirements (e.g., investing a percentage of their assets in Alabama), there was no method under the old taxing scheme for a foreign insurer to achieve parity with a domestic insurer on the tax rate charged on premium collections.
Alabama's old taxing scheme was challenged on constitutional grounds in Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985). The United States Supreme Court held that Alabama's insurance premium taxing scheme was unconstitutional, on the ground that it discriminated against foreign insurers.
After the Supreme Court rendered its decision in Ward, the out-of-state insurance companies involved in that case entered into a settlement with the State. Under the terms of the settlement agreement, the out-of-state companies, as plaintiffs, consented to the dismissal of their action in exchange for legislation that would redesign the tax system relating to the insurance premium tax. Accordingly, the Legislature enacted the Insurance Premium Tax Reform Act of 1993 (the "Act") (Act No. 93-679, Ala. Acts 1993; codified at Ala.Code 1975, § 27-4A-1 to -7); that Act contains the sections that the eight plaintiffs in this case now challenge as violating both the State Constitution and the Federal Constitution.
Because the Act made major revisions to the State's premium taxing scheme, we briefly describe how it was designed to be applied. The Act first provided that every insurer, whether foreign or domestic, is taxed at a rate of 3.6% on property and casualty insurance premium income. Despite the equalization of the basic premium tax rates under the new system, the plaintiffs filed this action in the Montgomery Circuit Court in March 1995, against the State and Michael DeBellis, insurance commissioner for the State of Alabama (collectively the "State"), charging that the new tax system violates the Fourteenth Amendment to the United States Constitution and §§ 1 and 35 of the Alabama Constitution. Specifically, they charged that two tax credits included in *109 the premium tax statute are discriminatory and, therefore, unconstitutional.
The plaintiffs first challenged the tax credit designated as the "Alabama Insurance Office Facilities Credit" (the "Office Credit"), which provides for incremental reductions in an insurer's tax rate for each office that it operates within the state, with the amount of the reduction per office dependent on the number of employees working in that office.[1] The plaintiffs also challenged the tax credit designated as the "Alabama Real Property Investment Credit" (the "Property Credit"), which provides for incremental reductions in an insurer's tax rate based on the amount of investment in real property the insurer has made within Alabama.[2]
The trial court held that the tax credit formula was unconstitutionally discriminatory because it was easier for larger companies with more offices and more employees to take advantage of the tax credit. The trial court specifically held:
"The [statutory] section under scrutiny taxes property and casualty premium income (with certain exceptions) at 3.6%. Section 27-4A-3(a)(3)d.1. provides incremental credit up to 1% for a specified number of offices staffed by a specified number of employees. Section 27-4A-3(a)(3)d.2. provides a credit of .1% for each one million dollars invested in real estate in Alabama up to an investment of ten million dollars or a maximum credit of 1%.
". . . .
"Under the taxing statute, it is easier for a large company to take advantage of the [Property Credit] than a small one. A company with less than one hundred million dollars in assets is effectively prohibited from investing as much as ten million dollars in real estate by § 27-41-34.... Similarly, it is easier for a company doing a large amount of business in Alabama through employees to take advantage of the [Office Credit], than a small one doing business through independent agents. The minimum number of offices a company must have to achieve the full credit is 100, staffed by 51 employees each, or a total of 5,100 employees.... The taxing classification thus favors larger companies and concurrently burdens smaller ones.
". . . .
"This Court finds and concludes that the subject tax discriminates in favor of large companies and burdens small ones.... The State suggests that if anything is held unconstitutional, it should be the credits.... The Court finds that the credits are an integral part of the section taxing property and casualty companies and cannot be severed from it."
Because the trial court held that the two credits were integral to the premium taxation scheme, it held the entire premium tax unconstitutional and ordered refunds for the plaintiffs; it did not order refunds for similarly situated insurance companies, holding instead that its judgment was to be prospectively applied to all other such companies.
*110 The trial court held that the challenged tax credits violated what it called the "equal protection" provisions of the Alabama Constitution, i.e., §§ 1 and 35, and accordingly did not reach the question whether they also violated the United States Constitution.
The defendants appealed. We have carefully reviewed the briefs of the parties and have carefully considered the oral arguments. Based on the reasons discussed below, we reverse and remand.

Discussion
In our analysis of whether the challenged tax credits violate §§ 1 and 35 of the Alabama Constitution, we must first note that, as a general principle, acts of the legislature are presumed by this Court to be valid and that this Court "seek[s] to sustain rather than strike down the enactment of a coordinate branch of the government" and that it will not hold such an act unconstitutional "unless it is clear beyond reasonable doubt that [the act violates] the fundamental law." Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944). In McAdory, this Court also stated that when a court is passing upon the constitutionality of a legislative act, "questions of propriety, wisdom, necessity, utility, and expediency [of the act] are held exclusively for the legislative bodies, and are matters with which the [court has] no concern." 246 Ala. at 9, 18 So.2d at 815.
Regarding the taxing power, we also note that "`in taxation, even more than in other fields, legislatures possess the greatest freedom in classification.'" Thorn v. Jefferson County, 375 So.2d 780, 786 (Ala.1979), quoting Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590 (1940). This Court has discussed the taxing power as follows:
"[T]he power to tax is essentially an attribute of sovereignty conferred by the people, through the constitution, on the state, and is vested in the legislative department.... Legislative classifications in tax matters are presumably valid, the burden being on the challenger to prove that such a classification or subclassification does not rest on a reasonable basis and such statutes are not to be deemed unconstitutional or invalid if any state of facts can be conceived which would support the subject of the tax."
Haden v. Watson, 270 Ala. 277, 281, 117 So.2d 694, 696 (1960). Similarly, as the Court of Civil Appeals has written:
"The power of the legislature to exempt from taxation unless restricted by express constitutional provisions is as broad as its power to tax. The legislature is free to exempt according to its views of public policy and expediency.
Barron-Leggett Elec., Inc. v. Department of Revenue, 336 So.2d 1124, 1127 (Ala.Civ.App. 1976) (citations omitted).
The burden the plaintiff must meet in showing that a taxation statute is unconstitutional is stringent.
"It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality, of negativing every conceivable or reasonable basis which might support the classification, and of showing clearly that the statute is unjustly discriminatory or that the classification is essentially arbitrary or unreasonable. Discrimination is the essence of classification and does violence to the constitution only when the basis of the discrimination is unreasonable."
Thorn, 375 So.2d at 787.
The plaintiffs here urge this Court to apply the "means-ends" test of State ex rel. Galanos v. Mapco Petroleum, Inc., 519 So.2d 1275 (Ala.1987), to the facts of this case. As the State correctly points out, this Court has not previously applied the "means-end" test to cases involving the constitutionality of taxation statutes. In Mapco, this Court enunciated a rule to be used in determining whether certain statutes violated the protections embodied in the Alabama Constitution. However, a review of Mapco makes it evident that this Court was not in that case formulating a test for determining whether taxation statutes were constitutional. In a thorough opinion, the Mapco Court examined the development of constitutional analysis of economic statutes, but it did not discuss the *111 long line of cases in which this Court has considered the constitutionality of taxation statutes. Further, in that section of Mapco where this Court set out the test described by some as the "means-ends" test, this Court introduced that test with the following:
"After due reflection, we determine that the following standard should be applied in review of a challenge such as this one to the constitutionality of legislation prohibiting sales below cost in the attempt to prevent monopolization...."
519 So.2d at 1284. Based upon our understanding of this Court's holding in Mapco, we can conclude only that in that case this Court did not overrule its long line of precedents governing our consideration of the constitutionality of taxing statutes.
Having determined that we should not apply the Mapco test, we apply the principles this Court has previously applied in cases involving questions of the constitutionality of taxation statutes. Applying those principles, we conclude that it is not clear beyond a reasonable doubt that the tax credits at issue violate either the Alabama Constitution or the Federal Constitution.
The plaintiffs have not shown that, because they are unable to take advantage of the tax credits, the application of the tax credits has produced an inequality that is "actually and palpably unreasonable and arbitrary." McAdory, 246 Ala. at 12, 18 So.2d at 817. The statute in question imposes a flat premium tax rate on all insurers, foreign and domestic, without exception. The credits challenged are based on objective, clearly ascertainable criteria. Although we recognize that some companies are economically unable at this time to qualify for the credits, we must also recognize that their inability to qualify is a result of their own business decisions and their own economic performance. We are not unaware of the argument that some insurers are prevented from investing the maximum amount in Alabama real estate because their total assets are too low. However, we note that the conditions prevailing today are not necessarily constant. Those companies could grow and thus be able to invest more. We find persuasive the State's argument that the statute does not discriminate, in that it does not create classes of insurers to be treated differently from other classes.
A statement of the Minnesota Supreme Court, in a case where it rejected an equal protection challenge to a taxing statute, could be applied in this case:
"Furthermore, any difference of effect that may have arisen from the [statute] is the result, not of discriminatory treatment, but of the unique financial situation of individual insurance company taxpayers."
John Hancock Mutual Life Ins. Co. v. Commissioner of Revenue, 497 N.W.2d 250, 254 (Minn.1993). In this present case, the insurance company taxpayers who meet the clear and objective criteria have been treated equally.
A party challenging a tax statute as unconstitutionally discriminatory must show that the discrimination embodied in the taxing statute is unreasonable and must negate every factor offered as a reasonable basis supporting the classification. The plaintiffs have not met that heavy burden in this case; therefore, we reject the plaintiffs' argument that the challenged tax credits violate the provisions of the Constitution of Alabama.
Although the trial court did not reach the question whether the challenged tax credits violate the Equal Protection Clause of the United States Constitution, we note that the federal constitutional issue was argued before this Court in the parties' briefs and at oral argument. Furthermore, if this case were remanded to the trial court for further consideration, that court would necessarily have to rule on the federal constitutional issue. Therefore, we have decided to address that issue now.
When a court is analyzing the constitutionality of a taxation statute under Equal Protection Clause jurisprudence, the appropriate test for the court to apply is the "rational relationship" test. Western & Southern Life Ins. Co. v. State Bd. of Equalization of California, 451 U.S. 648, 657, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). Under that test, a court must ask whether a challenged statute "is rationally related to *112 achievement of a legitimate state purpose." Id. The key question in determining whether the challenged statute meets that test has been subdivided by the Supreme Court of the United States as follows: "(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" Id. at 668, 101 S.Ct. 2070.
Taxpayers arguing that a state taxation statute violates the Equal Protection Clause of the Federal Constitution carry a heavy burden. For example, the Supreme Court has stated that "[p]arties challenging legislation under the Equal Protection Clause cannot prevail so long as `it is evident from all the considerations presented to [the legislature], and those of which [the court] may take judicial notice, that the question [whether the rational relationship test was met] is at least debatable.'" Id. at 674, 101 S.Ct. 2070, quoting United States v. Carolene Products Co., 304 U.S. 144, 154, 58 S.Ct. 778, 82 L.Ed. 1234 (1938).
The Act creating the tax credits challenged here was adopted in direct response to the decision of the United States Supreme Court in Ward. The State contends that one of the purposes of the legislation was to encourage competition among insurers in rural areas of the state, thereby providing greater access to insurance for citizens of rural areas. This goal, the State argues, is met because insurers will be encouraged by the Office Credit to open more offices in the state, some of which will presumably be in areas not already dominated by their competitors, i.e., in rural areas. The State also argues that the Office Credit was designed to encourage the employment of Alabama citizens. The State contends that the Property Credit is designed to encourage all insurance companies, foreign and domestic, to invest in Alabama property.
Upon our consideration of the arguments made by the State and those made by the plaintiffs, and in light of the standards set out above, we conclude that the challenged credits do not violate the Equal Protection Clause of the Fourteenth Amendment. The tax credits employed reasonable classifications designed to reach the legitimate legislatively determined goals of encouraging investment in the state and encouraging insurers to employ Alabama citizens and to open offices in rural areas. Whether the challenged tax credits are rationally related to these goals is "at least debatable." It was reasonable for the members of the legislature to believe that these goals would be promoted by the adoption of the credits. Consequently, we conclude that the challenged credits do not violate the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution.

Conclusion
The plaintiffs principally argue that the trial judge's ruling should be affirmed because, they say, the property and casualty section of the 1993 Acti.e., § 27-4A-3(a)(3) was structured to benefit "large" property and casualty insurers and unconstitutionally intrudes on their "economic rights."
The State's argument is summed up in its reply brief, as follows:
"The [Insurance] Premium Tax Reform Act [of 1993] and the credits contained therein are both constitutional. The credits do not discriminate; they are available to every insurer that makes the same investment in the Alabama economy. The [Property Credit] encourages insurers to invest in real estate because by doing so, they can reduce their tax burden. Similarly, the [Office Credit] encourages insurers to hire new employees, or to open new offices, because by doing so, the insurers can reduce their tax burden. To the extent that the plaintiffs do not presently take advantage of the entire credit, they are encouraged to expand their businesses. The credits are there for them. That, quite simply, is the factual picture. And, assuming arguendo that the credits do discriminate between `large' and `small' property and casualty insurers, it is more than clear that under the rational relation [test] or the [state constitutional standards], the [Insurance] Premium Tax Reform Act is a constitutional statute. The [plaintiffs'] argument to the contrary is a constitutional *113 challenge in name only. The [plaintiffs'] quarrel with the Act is at heart a policy debate; they argue that the credits are not optimal economic incentives. This Court has repeatedly stated that it will not be used to revise statutes in order to foster private notions of economic efficiency and efficacy."
After considering all of the arguments, we agree with the State that under either the rational relationship test or the tests applied in determining compliance with the Alabama Constitution of 1901, the plaintiffs have not shown that the challenged statute is unconstitutional. Under settled principles of law, a court cannot substitute its judgment for that of the people's elected representatives. We conclude that the challenged tax credits have not been shown to violate either the Alabama Constitution or the Federal Constitution; we reverse the judgment of the trial court and remand the cause for further proceedings or an order consistent with this opinion.
Because we reverse and remand, we need not consider the remaining questions presented by the parties concerning severability and prospective or quasi-prospective application of the trial court's ruling.
REVERSED AND REMANDED.
HOOPER, C.J., and SHORES and KENNEDY, JJ., concur.
HOUSTON and LYONS,[3] JJ., concur in part and concur in the result in part.
SEE, J., concurs in the result.
HOUSTON, Justice (concurring in part and concurring in the result in part).
I concur in that portion of the main opinion holding that the statutes have not been shown to violate the United States Constitution. Insofar as that opinion addresses the Alabama Constitution of 1901, I concur in the result. It is my firm and unwavering judicial opinion that the Constitution of Alabama of 1901 does not provide for equal protection, and that in Alabama, since the ratification of the 1901 Constitution, the only equal protection is that provided by the 14th Amendment to the Constitution of the United States. Smith v. Schulte, 671 So.2d 1334, 1338-39 (Ala.1995) (Houston, J., dissenting); Pinto v. Alabama Coalition for Equity, 662 So.2d 894, 901-10 (Ala.1995) (Houston, J., concurring in the result); Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 174-81 (Ala.1991) (Houston, J., concurring in the result).
I refuse to strike down a duly enacted statute based upon a nonexistent constitutional provision.
LYONS, J., concurs.
NOTES
[1] The statute provides:

"1. Alabama Insurance Office Facilities Credit.
"For each office owned or leased by an insurer in the State of Alabama and used for insurance operations, an insurer shall be entitled to a credit against the [premium tax] according to the following schedule:

"Number of Credit as a %
 Full Time of Premiums
 Employees Taxable under
 in Office Paragraph a.
 1-3 0.0025%
 4-10 0.0050%
 11-50 0.0075%
 51 or more 0.0100%

"The total credit allowable for Alabama insurance office facilities shall not exceed one percent of an insurer's Alabama premiums taxable at the rate specified in paragraph a. of this subdivision (3)."
§ 27-4A-3(a)(3)d.1., Ala.Code 1975.
[2] The statute provides:

"2. Alabama Real Property Investment Credit.
"For each $1,000,000 in value of real property investments in the State of Alabama, an insurer shall be entitled to a credit of 0.10 percent of its Alabama premiums taxable at the rate specified in paragraph a. of this subdivision (3). The total credit allowable for Alabama real property investments shall not exceed 1 percent of an insurer's Alabama premiums taxable at the rate specified in paragraph a. of this subdivision (3)."
§ 27-4A-3(a)(3)d.2., Ala.Code 1975.
[3] Justice Lyons was not a member of the Court when the case was orally argued, but he has listened to the tape of the oral arguments.